FETTER et al. v. FIDELITY AND CASUALTY COMPANY, Appellant.

Division One, April 1, 1903.

1. **Accident Insurance:** DISEASED KIDNEY: QUESTION FOR JURY. Where the insured in an accident policy in attempting to close a window lost his equilibrium and was thrown against a chair, causing a rupture of a kidney, from which rupture was produced a hemorrhage which caused his death, and an autopsy caused a cancerous condition of the kidney, it is for the jury to decide whether the cancerous condition resulted from the rupture or whether the rupture would not have occurred had there not been a previous weakened cancerous condition already existing, and there being substantial evidence to support either view, the court will not interfere whether their finding be the one or the other way.

2. ————: MEANING OF POLICY. If an accident policy agrees to pay in case the injuries resulting in the death of the insured are "sustained through external, violent and accidental means, independent of all other causes," the causes meant are the proximate or direct, not the remote causes.   Such a policy means that the accident must be the sole and only direct cause of insured's death; it does not mean that the beneficiaries can not recover if the accident so hastened on or accelerated some hidden or hitherto concealed disease as to cause his death, or if the accident superinduced or generated a disease which caused his death.

3. ——: BURDEN. Where plaintiffs have made out a prima facie case showing that the insured's death resulted from accident, the burden is on the company to show that it resulted from natural causes.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover*, Judge.

AFFIRMED.

*Harkless, O'Grady & Crysler* for appellant.

(1) In order to have entitled plaintiffs to recover in this cause, under the express conditions of the policy, and as a condition precedent to their recovery, it must have been shown that death resulted from accidental means independent of all other causes; and the undisputed evidence failing to show this fact, but, on the contrary, conclusively showing that it did not result from accidental means independent of all other causes, the court erred in refusing a peremptory instruction to the jury to return a verdict for defendant. National Ass'n v. Shryock, 73 Fed. 774; Ins. Co. v. Melick, 65 Fed. 178; Commercial Ass'n v. Fulton, 79 Fed. 423; Freeman v. Ass'n, 156 Mass. 351; Hubbard v. Ins. Co., 98 Fed. 932; Hubbard v. Mut. Acc. Ass'n, 98 Fed. 930. (2) Death in this case did not result from accidental means. This policy of insurance insured only against death, independent of all other causes, by accidental means, and not from death by result of accident. And under the testimony the death did not result from any accidental means. Feder v. Iowa State Ass'n, 107 Iowa 538. The court specially erred in instruction 3, in informing the jury that the burden of proving that the death resulted from some independent cause was upon defendant, because the express condition of the policy was to pay only upon the death by accidental means in case

it was independent of all other causes, and the burden of proof in this respect was upon plaintiffs and not upon defendant. Laessig v. Traveler's Ass'n, 69 S. W. 469; Aylward v. Briggs, 145 Mo. 604; National Ass'n v. Shryock, 73 Fed. 774.

*Ashley, Gilbert & Dunn* for respondents.

VALLIANT, J.—Appeal from a judgment of the circuit court of Jackson county in favor of plaintiffs founded on two accident insurance policies issued by defendant on the life of plaintiffs' father.

The petition is in two counts. In the first it is averred that the defendant issued its policy February 21, 1892, whereby it insured the life of plaintiffs' father against bodily injuries sustained through external, violent and accidental means and agreed to pay plaintiffs $5,000 if death should result to their father from such injuries, independent of all other causes, within ninety days from the date of the infliction of such injuries. It then goes on to state in detail the accident which it alleges caused the death of their father within less than thirty days from the date of its occurrence. The second count is in form substantially like the first, based on another policy issued November 18, 1893, for $6,000. The answer of defendant was a general denial and a special plea that the insured died a natural death, resulting from a diseased kidney. Reply, general denial.

The evidence on the part of the plaintiffs tended to show that W. J. Fetter, their father, whom we will hereinafter call the insured, was past sixty-nine years of age. August 6, 1899, he was at his office, and about five in the afternoon, preparatory to leaving, he and his son, who was with him, attempted to close a window, the upper sash of which had been let down. The sash did not move smoothly, therefore each of them took a window pole, which was designed for the pur-

pose, and inserting one end under the upper rim of the sash, endeavored to push it in place. But it seemed to be stuck, and required hard pushing to move it. In this effort the upper end of the stick held by the insured slipped off the rim, and the sudden release of its hold had the effect to throw the insured upon his right side against the edge of a table that was in place at the window designed to hold maps and drawings to be used by one standing, and therefore tall enough to strike the insured high on the side. He immediately dropped the stick, turned pale and groaned. In a few minutes afterwards he went home; he was looking tired and pale when he arrived; he took a light repast and went to bed. During the night he passed blood in his urine, and very early in the morning he sought his family physician, Dr. Porter, but did not see him. He returned home about 7:30 o'clock pale and suffering. His physician came and found him suffering pain in the right kidney and passing blood in his urine. August 13th he was taken to St. Joseph's hospital, where an exploratory examination was made by Dr. Binnie, assisted by Drs. Porter and Shy; incision was made in the back, and Dr. Binnie introduced his fingers into the pelvis of the kidney, but found nothing abnormal except the rupture and an enlargement. The patient rallied from the operation and the wound healed from the inside, but the hemorrhage continued as before until his death, which occurred September 2, 1899, less than thirty days from the occurrence of the accident. He died from hemorrhage, from loss of blood. The autopsy held September 4th, revealed a normal left kidney. The right kidney revealed a rupture, and the lower end of that kidney was cancerous, harder than the normal part, and less vascular, that is, less full of arteries and veins that would bleed. The rupture found in the kidney was between the normal and the cancerous parts, or into the healthy tissue; the hemorrhages were from the rupture and the

hemorrhages caused the death. Before the accident the insured was an active, spare, hardworking man past sixty-nine years, engaged in the business of fire insurance; he was in good health, having had no hard spell of sickness within the memory of any member of his family; his family physician had several times examined and passed him for life insurance; had examined his urine three months before the accident and found it normal, with no evidence of diseased kidney. All the testimony was to the effect that the accident of falling against the table caused the rupture, the rupture caused the hemorrhage and the hemorrhage caused the death. The majority of the expert witnesses were of the opinion that the cancerous condition of the kidney existed at the time of the accident and that that condition was the predisposing cause of the rupture, that is, that that condition rendered rupture more liable to occur under the force of the blow than if the kidney had been sound. But some of the expert testimony was to the effect that the cancerous condition itself might have been produced by the blow.

Dr. Hall, a scientific witness for defendant, who examined the kidney after it had been taken from the body, after death, was of the opinion that the cancer existed before the accident, and that the rupture occurred only in the diseased part of the kidney. He said: "The exciting cause of the hemorrhage was the injury and the predisposing cause was the cancer. Q. What do you mean by the predisposing cause? A. That was the condition of the kidney which gave rise to the production of the fracture. The predisposing cause is the remote cause. ' . . . The cancerous condition weakened the kidney to such an extent that it responded to this injury by some accidental means." He was asked as to the length of time required to develop a cancer; he answered: "That is a matter which must be stated relatively. I think this is, relatively, a rapid-growing cancer. Some cancers are

matters of years, most of them; but some are matters of months, and others matters of days.''

The cause was submitted to the jury under the following instructions asked by the plaintiff:

''1.   The court instructs the jury that if they find from the evidence that W. J. Fetter died in Kansas City, Missouri, September 2, 1899, and that such death resulted from bodily injuries sustained through external, violent and accidental means; and that the cause of said Fetter's death was the accidental rupture of his right kidney by an accidental strain, jar or fall while endeavoring to raise a window in his office in the American Bank Building in Kansas City, on the sixth day of August, 1899, their verdict will be for the plaintiffs on both counts of the petition.

''2.   The jury is instructed that if they believe from the evidence that the death of William J. Fetter was directly caused by the accidental rupture of his right kidney, then their verdict should be for plaintiffs on both counts of their petition, on the first count in the sum of five thousand dollars and on the second count in the sum of six thousand dollars, with interest on both said sums at six per cent per annum from February 21, 1900, notwithstanding that the jury further believes from the evidence that said kidney at the time of the rupture was diseased, provided, that the jury further find that said Fetter would not have died at the time, under the circumstances and in the manner he did die had it not been for the accidental rupture of his kidney.

''3.   The court instructs the jury that the defendant in this case having pleaded an exception in the terms of the insurance policies sued on and having alleged in their answer that the death of W. J. Fetter was caused by disease and not by accident, the burden of proving that said Fetter's death was caused by disease is upon the defendant, and unless they believe from the preponderance of the evidence that said

death was caused by disease they will find for the plaintiffs.

"4. The jury are instructed that they are the judges of the question of fact as to what was the cause of Mr. Fetter's death. If they find from the evidence that the cause of said death was accidental rupture of the right kidney, on or about August 6, 1899, under the circumstances as detailed in evidence, they will find for the plaintiffs, even though they believe from the evidence that said right kidney when so ruptured was diseased."

The defendant asked the following, all of which were refused except No. 2 ,which the court gave after modifying it by writing the word "direct" before the word "cause":

"1. The court instructs the jury that under the pleadings and the evidence in this cause, you will return a verdict for the defendant.

"2. The court instructs the jury that before they can find the issues for the plaintiffs they must find that the alleged accident was the sole and only cause of the death of the insured.

"3. Upon the question of whether the act of the deceased was an accident or not, you are instructed that if he was suffering or affected at that time with a disease of the kidneys, and the raising of the window would not have injuriously affected him in ordinary health and condition, but would be dangerous to him and result in injury because of the diseased condition of the kidney, then the injury was not due to accidental means independent of all other causes.

"4. The court instructs the jury that if you find the deceased, W. J. Fetter, sustained an accident, but that at the time it occurred he was suffering from a pre-existing disease of the kidney, and if the accident could not have caused death if he had not been affected with disease of the kidney, but that he died because the accident aggravated the effect of the disease or the .

disease aggravated the effect of the accident, the death of deceased in such case would not be the result of the accident alone, but would be caused partly by the accident, and in such case the plaintiffs can not recover upon the accident policies sued on in this case.

"5. The court instructs the jury that if you find from the evidence that the kidney of the insured was diseased, or affected by some disease or otherwise impaired, at the time he attempted to raise the window, and that the blood vessel in the kidney was ruptured while he was attempting to raise it, but further find that the rupture would not have been occasioned by the raising of the window if this kidney had not been diseased or impaired, then you are instructed that the insured did not die of an injury from the accidental means independent of all other causes, and if you so find, your verdict must be for the defendant.

"6. The court instructs the jury that the plaintiffs can not recover unless the jury find from the evidence that the insured died from external, violent and accidental means independent of all other causes, and that there is no evidence showing or tending to show that any accidental means resulting in an injury was either violent or external.

"7. The court instructs the jury that the insurance policies in question do not undertake to bind the defendant to pay the policies because of or on account of death resulting from an accident, but are limited to and bind the defendant to pay only in case death results from accidental means independent of all other causes. If you find from the evidence that the means employed by the deceased to raise the window were such means as he intended, and that he did not push or shove upon the pole with greater force or strength than he intended, then the plaintiffs can not recover, even though the result of the means employed may have produced the injury.

"8.    The court instructs the jury that the policies in question do not make the defendant liable by reason of an accident alone, but only make them liable by reason of an injury received from accidental means independent of all other causes. If you believe from the evidence that the means employed by W. J. Fetter to raise the window and his act in raising it was just what he intended to do, that he did it in the manner that he intended, and voluntarily did it, then you are instructed that the means employed by W. J. Fetter was not accidental, although you may further find that the result of the means employed was not contemplated or intended by him.

"9.    The court instructs the jury that this action is founded upon accident insurance policies, and that the death of the party insured does not make the company liable because of his death, but that the insurance policies are directly and only applicable to death resulting from an accident independent of all other causes. And in order for the plaintiffs to recover in this case upon the policies, they must establish and show by a preponderance of the evidence that the insured's death was directly caused by some accidental means independent of all other causes. In passing upon this question you will bear in mind and be guided by the fact that if any other cause contributed to the death of deceased than the alleged accident which he received, then plaintiffs can not recover. In this connection you are instructed that the testimony in the case shows that at the time of the death of the insured he was affected with a diseased condition of the kidney. Therefore, if you find that such diseased condition of the kidney existed at the time the assured attempted to raise the window, and the raising of the window caused the rupture of the kidney because and on account of the already diseased condition of the kidney and that such diseased condition of the kidney was of such character as that the pushing upon

the window might necessarily cause the rupture of the kidney because of its diseased condition, and that the pushing upon the window would not of itself have produced the rupture, but for and on account of the diseased condition of the kidney, then the plaintiffs can not recover in this action.''

Exceptions were duly saved.     The verdict and judgment were for the plaintiff on both counts, and defendant appealed.

I.     If, after weighing all the evidence in the case, the jury had reached the conclusion that the cancerous condition of the kidney was the result of the blow caused by the falling of the insured, striking his side heavily against the edge of the table, and had based their verdict on that conclusion, it would have had substantial evidence to sustain it.

There were seven surgeons who testified in the ease, who were all men of intelligence, learning and high character. They gave their testimony in a manner to show that they were expressing only their honest opinions. They agreed on some but disagreed on other points.     The majority of them were of the opinion that the cancer was there before the accident occurred, but that it might not have been.     Dr. Hall, a witness for defendant, expressed a more positive opinion than any other surgeon that the cancer existed before the accident:     He said:     ''There is no question in my opinion that it did exist at that time.''     Yet he also said:     ''I think this is relatively a rapid-growing cancer.     Some cancers are matters of years, most of them, some are matters of months and others are matters of days.''     One of the learned witnesses, Dr. Horigan, said that a blow of the kind in question is a common cause of cancer.     Add to this the fact that Mr. Fetter was an apparently healthy, active, energetic business man, who had never had a serious spell of sickness within the memory of any member of his family, that a few days after the accident he was exam-

ined by a number of surgeons who made an incision into his back to explore the kidneys and who, with all the aid that science could afford, discovered nothing wrong except the rupture of the right kidney, and an enlargement of it. Under those facts and in the light of the scientific evidence who can say, with certainty, that the blow which ruptured the kidney did not also cause the cancerous growth?

The genius of our law does not claim for it infallibility; it recognizes that there is an element of uncertainty that enters into every forensic contest, which human wisdom can not always make certain, and its aim is to come as close to the right as the means at hand will permit. Under our system of jurisprudence the jury is the tribunal to which questions of this kind are submitted for determination, and with all their human liability to err we have never yet discovered any better tribunal for the trial of questions of fact even where highly scientific propositions are involved. Science itself appeals to common sense for its recognition. On the question of whether or not the blow caused the cancer, if the jury had found either way, the verdict would have had honest, intelligent scientific testimony to support it.

II. There is no question but that the fall of the insured against the table, striking his side heavily against its edge, was accidental, that it produced the rupture of the kidney which caused the hemorrhage which caused his death. All the witnesses concur in that. They also concur in the opinion that, conceding the previous existence of the cancer, the man would not have died as and when he did if the accident had not occurred; that whilst death from the cancer might have resulted, it would probably have been deferred several years. But the contention of the defendant is that the accident would not have resulted in the rupture if the cancer had not been there; as defendant's witness Dr. Hall said: "The exciting cause of the

hemorrhage was the injury and the predisposing cause was the cancer." On this testimony the defendant says that the death was not the result of the accident "independent of all other causes." If we should give to those qualifying words of the policy the meaning that is now claimed by defendant they were intended to have, there would be scarcely any limit to their nullifying influence. Dr. Hall said in explanation of what has just been quoted, of his testimony: "The predisposing cause is the remote cause." If, therefore, there could be discovered in a man's body after his death any condition, before undiscovered and unsuspected, that, under scientific tests, would render him more amenable to accidents or less capable of resisting their influence, the policy would not cover the case. The fact that a man is sixty-nine years old, yet with an activity of body ordinarily found only in one much younger, might have something to do both with the fact of an accident and its result, and thus his age and unusual activity could be said to be a predisposing cause—remote, perhaps, as the learned witness designated the cancer in this case—still, in such case, in that sense, the accident could not be said to have been the cause of the death "independent of all other causes." The causes referred to in the policy are the proximate or direct, not the remote causes. This was evidently the view of the trial court when it modified the second instruction asked by defendant, inserting the word "direct" before the word "cause," thereby directing the jury that they could not find for the plaintiff unless they found that "the accident was the sole and only direct cause of the death of the insured," and that view of the law was correct. [Freeman v. Accident Association, 156 Mass. 351.] In that case the court said:

"Where different forces and conditions concur in producing a result, it is often difficult to determine which is properly to be considered the cause, and, in

dealing with such cases, the maxim, *Causa proxima non remota spectatur,* is applied. But this does not mean that the cause or condition which is nearest in time or space to the result is necessarily to be deemed the proximate cause. It means that the law will not go farther back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause of causes beyond seeking the efficient predominant cause, which, following it no farther than those consequences that might have been anticipated as not unlikely to result from it, has produced the effect. An injury which might naturally produce death in a person of a certain temperament or state of health is the cause of his death, if he dies by reason of it, even if he would not have died if his temperament or previous health had been different; and this is so, as well when death comes through the medium of a disease directly induced by the injury, as when the injury immediately interrupts the vital processes."

The undisputed evidence and conceded facts make out a prima facie case for the plaintiffs, and the defense that there was a remote predisposing cause of the death was given as full and fair consideration as the defendant was entitled to, and there is not sufficient in the evidence bearing on it to justify any impeachment of the verdict.

III. The theory of the instructions given at the request of the plaintiffs is that if the death of the insured resulted from the accidental rupture of his kidney, the plaintiffs were entitled to recover. These were supplemented by the modified instruction for defendant that the plaintiffs could not recover unless the "accident was the sole and only direct cause of death." Those instructions taken together put the case on the correct theory and they include whatever there legit-

imately was in the defendant's theory of any other cause. There was really so little in the remote-pre-disposing-cause theory that the court would have been justified in ignoring it altogether. It is complained that the third instruction for the plaintiffs was erroneous in placing the burden on the defendant to show that the insured died of cancer. When the plaintiffs introduced evidence tending to show that the insured died of hemorrhage resulting from the accidental fall, they made out a prima facie case. [Laessig v. Travelers' Protective Assn., 169 Mo. 272.] It was not necessary, then, for them to take up the defendant's side of the case and prove that the death did not result from any of the excepted causes named in the policies. The defendant in its answer had averred that the man died of cancer; the burden was on the defendant to prove it. From what has already been said it is unnecessary to say that the court did not err in refusing the defendant's first instruction, which was in the nature of a demurrer to the evidence. Defendant's sixth instruction is also in effect a peremptory direction to find for defendant.

Instructions 3, 5, 7, 8 and 10 refer the cause of the rupture to the strain in raising the window, and leave out of view entirely the accident of the pole slipping off the rim of the window sash and causing the insured to fall against the edge of the table.

Defendant's instruction 4 directs the jury that the plaintiffs can not recover "if the accident could not have caused death if he had not been affected with disease." There was no evidence to sustain any such hypothesis.

We find no error in the record. The judgment is affirmed. All concur.