JOHNSON, Appellant, v. CONTINENTAL CAS-
UALTY COMPANY, Respondent.

**St. Louis Court of Appeals, January 22, 1907.**

1. **ACCIDENT INSURANCE: Jury Question.** In an action on an
   accident insurance policy, providing for the payment of an in-
   demnity if the insured should die from an accidental injury
   caused by external violence, the evidence is examined and held
   sufficient to support a finding by the jury that the death of
   the insured was due to an accidental injury caused by exter-
   nal violence.

2. ———: ———: **Proximate Cause.** In such case where the
   evidence of a physician, in reply to hypothetical questions based
   upon the facts of the accident, was to the effect that the death
   was due to one or another of certain diseases caused by the acci-
   dent, such expert testimony was sufficient to submit the question
   to the jury whether the death was caused by the accident or
   by some disease unconnected with the accident.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse
A. McDonald,* Judge.

REVERSED AND REMANDED.

*James J. O'Donohoe* for appellant.

The court erred in giving a peremptory instruction
to the jury to find for defendant. Laessig v. Travellers'
Protective Ass'n., 169 Mo. 281; Summers v. Fid. Mut.
Aid Ass'n., 84 Mo. App. 605; Fetter v. Fidelity & Cas-
ualty Co., 174 Mo. 256; Columbia P. S. Co. v. Fid. & Cas-
ualty Co., 104 Mo. App. 157.

*Jones, Jones & Hocker* and *Manton Maverick* for
respondent.

(1) Under the testimony plaintiff failed to show
that the death of the insured was due to external, vio-

122 App—24

lent and purely accidental causes. Hook v. Railroad, 162 Mo. 581; Spiro v. Transit Co., 102 Mo. 250; Young v. Railroad, 113 Mo. App. 636; Laessig v. Travelers' Pro. Ass'n., 169 Mo. 281; Warner v. Railway, 178 Mo. 125; Smart v. Kansas City, 91 Mo. App. 586; Wilber v. Railway, 110 Mo. App. 689; Sharp v. Mut. As. Assn., 189 Ind. 192; Ins. Co. v. Seldon, 78 Fed. Rep. 285; Freeman v. Mercantile As. Ass'n, 156 Mass. 351; National Masonic Ass'n v. Shyrock, 73 Fed. 774; Carr v. Life Ins. Co. 100 Mo. App. 602. (2) The plaintiff's case failed to show a compliance with the conditions precedent to recovery under the policy, *i. e.,* notice to defendant of the insured's sickness or death within fifteen days thereafter. Delzell v. F. & C., 176 Mo. 281; Fink v. Ins. Co., 60 Mo. App. 673.

GOODE, J.—This is an action on an accident insurance policy issued to the father of the plaintiff and providing, among other things, that if the insured died within ninety days of receiving an accidental injury by external violence and as the consequence of said injury, an indemnity of $400 would be paid to plaintiff. There were other clauses providing indemnities to be paid to the insured for injuries not resulting in death. The cause was instituted before a justice of the peace, whence it was appealed to the circuit court. The trial in the latter court resulted in a verdict for defendant pursuant to the order of the court. Plaintiff appealed.

The evidence shows that during the life of the policy and on May 13, 1904, the insured died; and the question is whether the testimony tended to show his death was the result solely of an accidental injury inflicted by external violence. The insured was a motorman in the employ of the St. Louis Transit Company and was insured as such. About seven o'clock in the evening of April 29, 1904, he met with a fall in his home and the injuries then received are said to have caused his death

two weeks later. Persons who saw the fall testified regarding it, and other witnesses who did not see it, but saw the deceased immediately afterwards, testified as to his appearance and condition following the fall. According to the testimony of the witnesses who saw the accident, deceased had gone from one room of his home to another to get a drink and as he went back, fell against a dresser having a marble top and from thence to the floor. The marble slab of the dresser was whole prior to the fall but was found to have been broken in two, either by the force with which deceased's head struck it, or by falling on the floor. Persons rushed at once to the relief of deceased and found him unconscious, a lump on his head under the right ear and a contusion under his shoulder-blade an inch or more long. He was lying on his back with his head against the wall of the room. He was lifted from the floor and carried to a bed which he never left; dying, as said, on the thirteenth day of May. He seemed to be in pain until the time of his death. A physician was called to attend him within fifteen minutes after he fell. The testimony tends to prove the fall was a violent one. It made considerable noise and attracted the attention of a man who lived in another house in the same yard. Deceased was unconscious the entire night following the accident, but afterwards was conscious part of the time, though he talked but little. A physician who was put on the stand by plaintiff and qualified as an expert, testified in answer to a hypothetical question embodying substantially the facts we have stated, that if a person met with such a fall as deceased did, was confined to his bed thereafter and died two weeks later, the death would be due to one of two conditions: traumatic pneumonia, that is pneumonia resulting from a violent injury, or cerebral hemorrhage. The physician said the patient must have died from one of those causes, but which one could not be known without knowing the patient's temperature at in-

tervals, his other symptoms preceding death, and whether he had any prior disease; that if he was in good health before the accident, in the opinion of the witness, he must have died of one of said ailments. On cross-examination the physician said the patient, while in bed, might have contracted some other disease, like scarlet fever, and have died from that.

In our judgment the foregoing evidence made a case for the jury; and a finding from it that the death of the insured was due to an accidental injury caused by external violence could be upheld. For aught that appears the deceased was in good health prior to the accident. The evidence tends to show he was; for he had been following his usual avocation of operating a trolley car. There was not the least testimony tending to show that after he was lifted from the floor in an unconscious state, which, if it was not the consequence of, occurred simultaneously with the fall, he contracted a disease which could have led to his death. Beyond doubt the proof would support the inference that deceased was knocked into unconsciousness when he struck his head on the marble slab, and we think it would support the further inference that the violence of the injuries received directly led to an ailment from which he died. The case appears to us to be clearly one for the triers of the facts. Defendant's liability turns on what was the proximate efficient cause of the death of the insured; whether or not his death was the natural consequence of the injury he received from the fall instead of being due to some disease existing at that time or developed afterwards, but not due to the accident. [Fetter v. Casualty Co., 174 Mo. 256, 73 S. W. 592; Freeman v. Assn., 156 Mass. 351; 3 Joyce, Insurance, chap. 59, sec. 2832.] If either traumatic pneumonia or cerebral hemorrhage ensued as the result of the fall, and deceased died in consequence of the disease, his death was caused proximately and solely by accidental violence within the meaning of the

policy. [Cases supra; Hall v. Acc. Assn., 86 Wis. 518; Isitt v. Assurance Co., 22 Q. B. Div. 504; Acc. Ins. Co. of North America v. Young, 20 Can. S. C. 280; Barry v. Assn., 131 U. S. 100; Standard Life & Acc. Ins. Co. v. Thomas (Ky.), 17 S. W. 274; McCarthy v. Ins. Co., 8 Biss. (U. S.) 362.]

Respondent's position is that the testimony left the question of whether the deceased died from an accidental injury or from some other cause, so indefinite that the jury had no right to pass on the issue, and that the expert testimony regarding the cause of death was opposed to common experience and had no probative force or value. The value of the physician's testimony was to be determined by the jury. We have found nothing which appears to us to be incredible in what he swore. But it is argued that the doctor traced the death to the fall on the assumption that, during the interval of two weeks between the accident and the date when deceased died, no disease developed independently of the fall; admitting that he (the doctor) did not know whether any malady sufficient to cause death, say Bright's disease, did develop. No doubt it was possible for the insured to have died of some ailment unconnected with the accident and which he was afflicted with prior to the accident or contracted subsequently; but whether he did or not was, on the evidence adduced, a fact to be found by the jury. Demonstrative proof that he died solely in consequence of the accident, hardly could be made. On such issues evidence cannot go beyond producing that degree of conviction in reasonable minds on which men are accustomed to decide and act in ordinary affairs. All possibility of mistake cannot be excluded. The Fetter case is strikingly like this one in every important fact, and the policy considered therein is exactly like the present policy in requiring proof that death resulted solely in consequence of an injury due to external violence. The insured person fell against the edge of a

table and this mishap was followed by a hemorrhage from the kidneys and by death in thirty days. An autopsy showed one of the kidneys was cancerous and it was held to be a question for the jury whether or not this diseased condition was caused by the fall or existed before; there being contradictory evidence on the issues. That was a case of less cogent proof that death was caused by a violent accident, than was adduced in the present case. The other decisions we have cited presented facts very similar to those contained in the present record and in all of them it was held to be a question for the jury as to whether death was caused by an accidental injury.

The point is made that no notice of the death of the insured and claim for indemnity was given as required by the policy. Defendant's counsel stated in open court that the defense to the action was that the insured did not die from any injury, but from disease. Therefore it appears that defendant did not rely on failure to give notice. If such a defense had been interposed, perhaps proof would have been made that notice was given.

The judgment is reversed and the cause remanded.