ANN MARRIOTT, Respondent, v. MISSOURI PA-
CIFIC RAILWAY CO., Appellant.

Kansas City Court of Appeals, February 7, 1910.

1. **PERSONAL INJURY: Crossing: Flagman.** This action is
brought by the widow of a deceased passenger who received his
fatal injury in the same collision where the widow herself was
injured and for which she recovered damages, which on appeal
was affirmed by this court. *Held,* that the evidence in that case
and this as to defendant's negligence, and the pleadings and
instructions complained of, being the same, what is said in
that case determines this on the demurrer to the evidence and
the instructions and pleadings.

2. ————: ————: **Proximate Cause: Death Four Months After
Injury.** Where a passenger is injured in a collision by being
thrown across the car, striking and bruising his side, but who
is able to give immediate assistance to his wife, also injured,
who immediately accompanies her in a hack two miles to a rela-
tive's house where they remain four days, when he takes her a
distance of twenty miles to another relative, where they remain
three weeks, he all the time going about apparently unhurt
and making several trips on business, and finally, about four
weeks after the collision going to his home in Utah, where he
attended to his affairs for about six weeks, when he was taken
to his bed and in six weeks more died. *Held,* that it being shown
that during all this time he complained of pains in side and
body, that when he reached Utah he looked bad, and that be-
fore being taken down he became able to walk only with diffi-
culty, and that his bruised side was swollen—it was a question
for the jury whether his death was caused by injury received in
the collision.

3. ————: **Physicians:** ————: **Experts.** That notwithstanding
eminent physicians testify that in their opinion death was not
caused by injury received in a collision, yet, there being other
evidence of the condition of the person, the jury are at liberty
to determine the question contrary to the opinion of the ex-
perts. [Cases discussed.]

Appeal from Buchanan Circuit Court.—*Hon. C. A.
Mosman,* Judge.

AFFIRMED.

*Ben J. Woodson* and *Martin L. Clardy* for appellant.

*Brewster, Ferrell & Mayer* for respondent.

ELLISON, J.—Plaintiff and her husband were passengers on one of defendant's trains. This train collided with a train of the Chicago, Burlington & Quincy Railway Company, whereby plaintiff's husband was injured and from which injury, as she claims, he afterwards died. She instituted this action as his widow, for damages, and recovered judgment for seven thousand dollars in the trial court.

The collision occurred on the 18th of September, 1907, and is the same in which plaintiff herself was injured and whose case against this defendant was decided by us at this term of court. We there decided that there was substantial evidence tending to show negligence of defendant and that therefore the trial court properly refused a demurrer asked by defendant. We likewise examined objections to instructions given for plaintiff in that case and concluded such objections were not good. What we there said on the subject of the sufficiency of the evidence and the correctness of plaintiff's instructions, applies to and determines those matters in this case, since they are identical; and we refer to that case for the ground of our ruling these points against defendant in this case. And so we likewise refer to that case for a statement of the facts upon which the action is founded.

But an objection to the judgment arises in this case which could not have been made to the other and which calls for additional consideration. Defendant claims that deceased's death was not shown to be the result of the collision and that the finding of the jury that it was, was mere conjecture. As has been stated, the collision occurred on the 18th of September, at St. Joseph, Missouri. The deceased died in Utah on the

10th of January following. When the car of the other train struck the car in which plaintiff and deceased were, it threw him violently to the other side of the car, bruising his right side about the lower rib, but he immediately got up and went to plaintiff's assistance. He accompanied her from the car to a cab and thence to a distant part of the city. It was not supposed that he had suffered any substantial injury and he was not attended by a physician, though one examined him and found a bruised place on his side. He went about as usual though he complained from time to time of a pain in his side and back. In four days he went with plaintiff on a train to Stewartsville, about twenty miles distant. They were there three weeks and he went to St. Joseph several times and to Kansas City, sixty miles distant, at least once. At the expiration of three weeks he and plaintiff went to their home near Salt Lake City, Utah, arriving there about October 18th. Shortly before December 1st, he felt "unable to walk down town, a distance of three blocks," and on that day he went to bed and in about six weeks, January 10th, he died. A physician attended him, but it does not appear what he discovered or what treatment he gave or advised. It may be stated, generally, that there was evidence in plaintiff's behalf tending to show that deceased was sixty-five years old, and while before the collision he was a hale, hearty and robust man, rarely ever out of health, he complained from time to time after the collision until he got back to Utah and there his complaints continued and he began to show signs of failing strength. A swelling in his side appeared. Finally, as just stated, he took to his bed and in six weeks thereafter died. Two physicians gave their opinion, on hypothetical questions, that the death could reasonably have been caused by the injury received at the collision.

But as against this showing for plaintiff was that of defendant, consisting in part of the opinion of phy-

sicians that there was no connection between his death and the collision. These physicians were men of great learning and experience and well-merited reputation, but they had not attended upon deceased and only stated their opinions as founded upon hypothetical questions.

In such state of evidence we do not feel that we would be justified in declaring that no more appears than conjecture, or possibility of the death being the proximate result from the collision and that the jury had no proper basis for the verdict. [Sharp v. Ry. Co., 213 Mo. 517; MacDonald v. Ry. Co., 219 Mo. 468; Sorenson v. Ry. Co., 36 Fed. Rep. 166.]

In the Sharp case the family physician of the deceased testified that his "injuries had not a whit to do with his death; that his hurts from the fall were merely muscular, calculated to lame his back temporarily:" but the Supreme Court affirmed the verdict in favor of plaintiff, and said that: "If a man, well today, is badly injured, and from that time on sickens (with symptoms referable to his injury) and, languishing, finally dies, a disagreement among doctors as to the name of the disease on him at the moment of dissolution does not create a condition from which it can be said that a verdict one way or the other is merely guesswork . . . For, if there had been no physicians testifying as experts and the jury had been without medical advice, yet plaintiff's lay evidence showed a cause for Sharp's pain and suffering and his visible approach to the grave in the steps he took, commencing at the place and time of his injury and ending there, are rational deductions within the right of a jury in applying common sense to facts. The expert medical testimony was merely advisory, and, because the advice given to the jury by the opinions of the doctors differed, that presents no case for our interference."

In the MacDonald case the court said: "It must be borne in mind, too, that doctors' theories under oath

on the witness stand are merely advisory in character. Juries can take or leave that advice on the condition only that it seems reasonable or not to them; and because doctors disagree, it is not valid reasoning to say that juries should also disagree, or should take the advice of one set as against that of another, or should throw to the winds their common sense, and, with minds littered up with conflicting medical advice, be unable to come to any agreement whatever, even as sailors (tossed to and fro by contrary winds) reach no harbor. . . . In the case at bar there was substantial testimony that Judge MacDonald came to old age hale and hearty. On a certain day in October he is thrown against the framework of a stove and struck a tremendous blow. The mere visible sign of his injury at the time was not great, but it would be dealing only with the surface of things to stop with that visible sign. The controlling fact in the case (deducible from its history), is that traceable to that injury he was never again a well man and that traceable to the same injury, after a rally at the start, he went steadily down hill to his grave. A blow such as he received was shown to be a probable cause of angina pectoris. As we see it, there is no link out in the chain of the evidence upon which the jury could rationally base their conclusion that the injury caused his death. Independent causes were suggested and conflicting theories were developed before the jury. It was for them to say which theory was the most reasonable."

In the Sorenson case, it was said that: "Where medical witnesses disagree in opinion and theory, the undisputed history of the case is often the most satisfactory and controlling fact. In this case, such history fully justified the verdict. . . . Soon after this accident he began to droop and fail, and so continued failing, with a short and slight change for the better in the spring of 1884, until his death in September, 1884. Such a fact is significant, and upholds

the verdict. I know that *post hoc* is not always *propter hoc,* but where the *propter hoc* is uncertain, the *post hoc* may often be decisive."

Those cases are especially applicable to this controversy as it has been argued orally and in writing by the respective counsel. We had occasion to say in another case that it is not necessary, in order to uphold a verdict, that the case should exclude possibilities; reasonable probability is all that is required. In Fetter v. Fidelity and Casualty Co., 174 Mo. 256, Judge VALLIANT says: "The genius of our law does not claim for it infallibility; it recognizes that there is an element of uncertainty that enters into every forensic contest, which human wisdom cannot always make certain, and its aim is to come as close to the right as the means at hand will permit. Under our system of jurisprudence the jury is the tribunal to which questions of this kind are submitted for determination, and with all their human liability to err we have never yet discovered any better tribunal for the trial of questions of fact even where highly scientific propositions are involved. Science itself appeals to common sense for its recognition."

A careful examination of the entire record, including suggestions of counsel not herein specially mentioned, has failed to disclose to us any proper ground for interference with the judgment, and it is accordingly affirmed. All concur.