LANGEBERG, Respondent, v. INTERSTATE BUSINESS
MEN'S ACCIDENT ASSN., Appellant.

(231 N. W. 930.)

(File No. 6723.   Opinion filed August 12, 1930.)

Bailey & Voorhees and M. T. Woods, Jr., all of Sioux Falls, for Appellant.

Krause & Krause and Ervin P. Van Buren, all of Dell Rapids, for Respondent.

BROWN, P. J.   Plaintiff was insured by defendant against "loss of life, limb, sight or time, by reason of physical injury effected by accidental means, independent of all other causes."   By occupation he was a carpenter and had worked steadily at his trade ten or twelve hours a day in the neighborhood of Dell Rapids for more than three months immediately prior to the injury, hereinafter referred to.   Having finished his work in the neighborhood of Dell Rapids, he took a job in the neighborhood of the Black Hills, some four hundred miles distant, finishing a modern house on a ranch.   He worked on this job twelve hours a day for eight days, and while at work on the ninth, boring, with a brace and bit, holes in the edge of a door to make a slot for the insertion of a mortise lock, he encountered a knot in the wood which caused the threads of the bit to fill up so that he could not make the bit catch, and to continue cutting he forced his weight heavily against the head or "rose" of the brace.   His foot slipped, the door which was held in place by a chisel driven between it and the floor swung loose, and he fell to the floor; the rose of the brace being driven heavily against the upper part of his abdomen.   He felt a sharp pain in the region of the stomach, and going out to the porch vomited blood and at intervals during the afternoon and evening vomited large quantities of blood.   The ranch was thirty miles from

the nearest railroad town, and efforts to procure a doctor by telephone were made but proved unavailing. As soon as it could be done a fellow workman started to take him home to Dell Rapids in an automobile, but at Chamberlain he was so ill that he was placed in the hospital there, where he remained five days and was then taken to his home in Dell Rapids. After treatment there for about three weeks designed to build up his strength so that he could stand an operation, an operation was performed, and it was found that the bleeding came from an area of the stomach in which there was an ulcer. He had experienced no pain or symptom of ailment prior to the accident. In an action on the policy, plaintiff recovered a judgment, from which, and from an order denying a new trial, defendant appeals.

A surgical expert, testifying as a witness for defendant, stated "that the sole cause of the hemorrhage was the existence of the ulcer in the upper part of the stomach which caused an erosion of the blood vessels in consequence of which they broke and that the pressure against his stomach by falling against the rose of the brace did not affect the ulcer." On cross-examination he was asked, "if he had read Tice's work?" to which he replied, "it is a pretty well padded work and I haven't read all of it." Thereupon, plaintiff's counsel asked the question, "It is padded, is it not, by the opinion of Dr. Mayo on page 450, that the majority of stomach hemorrhages occur through means other than from gastric ulcers." An objection on the ground that this called for hearsay was overruled, and the witness answered, "I don't know." In view of the answer it would seem too plain for argument that the assignment based upon this episode cannot be sustained. Defendant clearly was not prejudiced by the ruling of the court or the answer of the witness.

It is to be kept in mind that this is an action to recover, not for death, but for loss of time resulting from the accident. Even if a gastric ulcer existed, it had caused plaintiff no inconvenience up to the time of the accident; he had no reason to even suspect it existed. But for the accident he might have gone on working as before, unaware of the ulcer until death overtook him from a natural cause entirely dissociated from the ulcer. Had it not been for the accident he might have lived out his life and never lost any time from work. With that possibility may it not be said

that the accident was the sole cause of the loss of time resulting from the injury?

Defendant produced two witnesses who qualified as medical and surgical experts. One was the witness hereinbefore referred to; the other was the physician who attended plaintiff from the time he reached his home after the accident until after the operation and who performed the operation. The latter testified that the force of the blow when plaintiff slipped and fell on the rose of the brace "undoubtedly caused the rupture that was the immediate and direct cause of the hemorrhage." He also said: "In my opinion the slipping and the blow on the abdomen from the brace and bit alone would not have caused the hemorrhage if the ulcer had not been present. The injury to the ulcerated surface produced a hemorrhage as a result of the blow or injury. The blow was the immediate cause of the rupture and hemorrhage, the blow against the ulcerated surface." The other expert who testified on behalf of defendant said in language of finality that the blow received by falling on the brace and bit could have no effect whatever on the ulcer nor could it have caused the hemorrhage. He said that hemorrhages resulting from an ulcer in the stomach always occur without exercise, or without a blow or pressure from the exterior; that they are the result of erosion of the blood vessels by disease; and that the application of external violence would not cause a rupture of either healthy or diseased blood vessels in the stomach. He said, "I cannot think of another cause of ruptures of blood vessels and a hemorrhage of the stomach aside from ulcers." A witness for plaintiff who also qualified as an expert, in response to a hypothetical question reciting the circumstances of the injury and plaintiff's condition as to health before, and his symptoms after the accident, stated that in his opinion plaintiff had received an injury to his stomach lining sufficient to produce hemorrhage. He further stated that ulcers are usually classified as acute and chronic, and that an acute ulcer of the stomach may be caused by either internal or external injury, and that acute ulcers come on rapidly and most of them get well without operation. He further testified, "There are many stomach hemorrhages that occur without an ulcer and I believe that is true particularly under the circumstances this injury occurred." He further testified that assuming plaintiff had a chronic ulcer of the stomach at the time

of the injury, it would be his opinion that the pressure or blow resulting from falling against the brace and bit disturbed the ulcer, causing it to bleed and producing a hemorrhage; that an injury sufficient to dent the surface of the stomach or ulcer would produce the bleeding. The two experts who testified for defendant having flatly contradicted each other as to the possibility of the blow having been the direct cause of the hemorrhage, and the expert testifying on behalf of plaintiff having corroborated the opinion that the hemorrhage was the direct result of the blow received by falling on the rose of the brace, the trial court properly left it to the jury to say whether or not the injury was effected by accidental means independent of all other causes. In Fetter v. Fidelity & Casualty Co., 174 Mo. 256, 267, 73 S. W. 592, 61 L. R. A. 459, 97 Am. St. Rep. 560, where the court had under consideration an accident policy with the same conditions as that in the instant case and where death resulted from a hemorrhage from a cancerous kidney when plaintiff fell heavily against the edge of a table, and surgical testimony was that "the exciting cause of the hemorrhage was the injury, and the predisposing cause was the cancer," it was contended that this testimony showed that the death was not the result of the accident "independent of all other causes." But the court said that the causes referred to in the policy are the proximate or direct, not the remote causes, and the doctor's testimony being that the direct cause was the injury while the cancer was only the predisposing or remote cause, the case was properly submitted to the jury, and a verdict for plaintiff could not be said to be without support in the evidence.

■■ Appellant assigns as error an instruction to the effect that if the jury should find that plaintiff sustained personal injury by accidental means as the sole moving and active cause which directly produced such physical injury, plaintiff would be entitled to recover under the terms of the policy, "and this notwithstanding it may appear from the evidence in the case that upon subsequent investigation the formation or existence of a gastric ulcer was discovered in the stomach, and that such ulcer may have existed prior to and at the time the accidental injury happened, provided, that you further find that the plaintiff would not have had the rupture and hemorrhage at the time and in the manner he did have it if he had not been injured by accidentally slipping and falling

against the brace and bit." The rule laid down in this instruction is supported by the opinion of the court in Fetter v. Fidelity & Casualty Co., supra; Campbell v. Aetna Life Ins. Co., 283 Mo. 63, 222 S. W. 778. We think the evidence is sufficient to sustain the verdict on the ground that plaintiff's loss of working time resulted from physical injury effected by accidental means independent of all other causes.

The judgment and order appealed from are affirmed.

POLLEY, SHERWOOD, and BURCH, JJ., concur.

CAMPBELL, J., concurs in the result.