**Lucille E. CONE, Appellant,**

v.

**BENEFICIAL STANDARD LIFE INSURANCE COMPANY, a Corporation,**
Appellee.

No. 18823.

United States Court of Appeals
Eighth Circuit.

Jan. 9, 1968.

**458**

Walter A. Raymond, of Raymond, West & Strader, Kansas City, Mo., for appellant; Raymond, West & Strader, and William M. Day, Kansas City, Mo., on the brief.

R. Lawrence Ward, of Shughart, Thomson & Kilroy, Kansas City, Mo., for appellee; Harry P. Thomson, Jr. and Shughart, Thomson & Kilroy and Elmer T. Carl, Kansas City, Mo., on the brief.

Before BLACKMUN, GIBSON and LAY, Circuit Judges.

LAY, Circuit Judge.

The appellant, widow of the insured, brought suit on an accident insurance policy as the named assured for death benefits in the amount of $13,200.00. The jury found for the appellee-insurance company generally, and answered three special interrogatories.[1]

Appellant urges error (1) in the court's instruction regarding proximate cause, (2) in the admission into evidence of certain expert testimony, (3) in the failure of the court to enter judgment for appellant on the answers to the special interrogatories, and (4) in the court's failure to give two of appellant's requested instructions. We affirm the judgment below.

Elmer W. Cone was 65 years old at the time of his death on July 8, 1964. On that date, Mr. Cone was driving his car at a speed of 20 to 25 miles per hour southward on a six-lane divided parkway in Kansas City. According to an eyewitness, Mr. Cone "bent over" the wheel; the evidence showed that his car then slowed down, jumped the left curb onto the medial strip, traveled 40 feet, hit some bushes in the medial strip, then angled across the north-bound lanes, across

---

1. The special interrogatories were:
"Has the plaintiff proved by a preponderance of the evidence
(a) that Elmer W. Cone's death on July 8, 1964, was the result of an accidental collision between his automobile and the Combs Chapel
Yes [x]
No [ ]
(b) that the sole, direct and proximate cause of Elmer W. Cone's death was an accidental collision

between his automobile and the Combs Chapel
Yes [ ]
No [x]
(c) that disease of Elmer W. Cone either was not a cause of the collision of his automobile with the Combs Chapel, or if it was a cause was a remote cause thereof
Yes [ ]
No [x]"

the yard and parking lot of a church and came into "violent collision" with the church building. From where the car first veered left, it traveled about 670 feet before the collision.

The decedent's history of cardiovascular arteriosclerotic problems included a stroke in 1960, visual disturbances in 1962 and a syncopal attack (fainting spell) in 1963. He was told by his family physician not to drive his car in 1962. However, as of 1964 he was again driving his car without mishap. Doctor Slentz indicated Mr. Cone had not asked permission to drive his car and stated "in my opinion, a man in his condition should not be driving a car."

The deputy coroner attributed his death to trauma and listed on the death certificate:

"Shock and hemorrhage resulting from crushing injuries of the chest, ruptured liver and massive subdural hemorrhage."

A pathologist, called to testify for the insurance company, stated that the decedent was "most likely unconscious" at the time of the collision. Another doctor felt that a "black out or another Stokes-Adams attack * * * may have started the thing." The coroner testified that the decedent hemorrhaged at least a quart of blood into the cavities of the body. This indicated to him Cone was still alive at the time of the collision. The defense expert indicated that this bleeding could have occurred after death.

It is contended that the court's instructions placed a greater burden on the appellant than legally required. The court charged that appellant had the burden to prove that the accident was the "sole and proximate cause" or the "proximate and sole cause." The language of the policy controls. The policy recites that the "injury" must be caused "by an accident * * * resulting directly and independently of all other causes."

Under Missouri law this policy language is merely descriptive of the requirement of "proximate cause"; the word "sole" is redundant and unnecessary to the charge. See Propst v. Capital Mutual Assoc., 233 Mo.App. 612, 124 S.W.2d 515, 522; Brown v. Metropolitan Life Ins. Co., 327 S.W.2d 252 (Mo.Sup.Ct. 1959). Present in the court's charge is the ambiguity that the accident must be a "sole" cause, in addition to the "proximate cause." The two terms, when used with the conjunctive "and," might well impart an improper meaning to the instruction as distinguished from the meaning when the conjunction is omitted, as in "sole proximate cause." It has long been settled under Missouri law that a remote cause may exist without defeating recovery, and that an insured need not prove the accident to be the "sole" cause but only to be the "proximate" cause. See Fetter v. Fidelity & Casualty Co. of N.Y., 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459.

However, this apparent ambiguity cannot avail appellant here. Appellant not only failed to object to this phase of the court's instruction, but was specifically asked by the court concerning these instructions. Appellant replied to the court that he had "no objection." [2]

2. Colloquy between court and counsel:
  " '* * * and if the plaintiff further has proven by a preponderance of the evidence that the *proximate and sole cause,* as defined hereinafter, of the death of Elmer W. Cone was the accidental collision between the automobile which Elmer W. Cone was occupying and the George Hamilton Combs Chapel. If you find that the plaintiff has proved these facts by a preponderance of the evidence, then your verdict shall be for the plaintiff.'
  "The reason I don't say 'operating,' this would imply he wasn't blacked out and I don't want to imply anything about that. What about that portion I have just read?
  "Mr. Raymond: No objection.
  *  *  *  *  *  *  *
  "Here is the next one: 'On the other hand, the defendant claims that the collision between the automobile plaintiff was occupying and the George Hamilton Combs Chapel was not the *sole and proximate cause* of the death of the insured, Elmer W. Cone.
  "How about that?
  "Mr. Raymond: No objection." (Emphasis ours.) R. 88–89.

Federal Civil Procedural Rule 51 cannot be circumvented under the guise of "plain error" in these circumstances. This rule is designed to permit timely correction of error in order to avoid new trials. It is not too great a burden on counsel to point out to the court specific objections. Nevertheless, there can be no prejudice to appellant here. The answer to the third interrogatory clearly demonstrates that the jury did not deny recovery to appellant because of the existence of a "remote" cause. It found the disease to be a "proximate cause" of the death. See Bass v. Dehner, 103 F.2d 28, 34 (10 Cir. 1939), in which it is stated:

> "Where special findings by the jury show that plaintiff's intestate was not injured by an instruction, error therein is without prejudice."

■ Next, appellant attacks the admissibility of opinion testimony by an expert witness that the insured was "unconscious" before he collided with the chapel wall. Mitigating the effect of this answer, however, is the finding by the jury that the insured did not die of a heart attack. As will be discussed, to determine this the court submitted the first interrogatory. However, even more significant is the fact that the hypothetical question proffered was seeking more than a layman's observation of the decedent's appearance. The doctor's answer was based upon his professional opinion under hypothetical medical facts and as such relevancy and competency of both the question and answer were well within the governing discretion of the trial court.

Appellant also urges error in the trial court's refusal to enter judgment for appellant by reason of the answers to the special interrogatories. Appellant premises her position on the answer to interrogatory (a), that the decedent died as a "result" of the accidental collision. Appellant argues that this answer is conclusive to the merits of the lawsuit and that we should direct the district court to enter judgment against the insurance company. We disagree.

■ First we observe the question is improperly preserved by appellant's post trial motion filed some eight and one-half months after judgment was entered. Appellant's attempt to rely upon Federal Civil Procedural Rule 60(b) is totally misplaced. However, appellant did preserve assignment of error as to the alleged inconsistency with the general verdict in his motion for new trial. If the verdict is perverse because of inconsistency with special findings a new trial may be ordered. Fed.R.Civ.P. 49(b); see Wayne v. New York Life Ins. Co., 132 F.2d 28 (8 Cir. 1942); Welch v. Bauer, 186 F.2d 1002 (5 Cir. 1951).

■ Although not without some difficulty, we conclude there is no inconsistency to the verdict and special findings. The answer to (a) is not definitive, or even meaningful under definitions of proximate or remote cause, or necessarily within the language of the policy itself. The jury simply found that the decedent died as a "result" of the auto accident. Standing alone this answer is simply a "but-for" finding of causation without the attached legal significance appellant urges. As Professor Prosser says:

> "The event without millions of causes is simply inconceivable; and causation alone can provide no clue of any kind to singling out those which are to be held legally responsible." Prosser, Torts 243 (3d ed. 1964).

The answer to the third interrogatory leaves no doubt of the jury's meaning with regard to the first. The jury found, according to interrogatory (c), that a non-accidental cause was a proximate cause of the death. Therefore, we conclude interrogatory (a) assumes legal significance and import only when considered with the answers to the other interrogatories and the general verdict. The court indicated that the reason for submitting interrogatory (a) was to serve merely as a determinant of whether the deceased had expired before he collided with the wall.

Based upon this answer that the death was the result of the collision, appellant

urges that the findings in interrogatories (b) and (c) and general verdict are either irrelevant or erroneous. Appellant urges that this "inconsistent" result is directly related to the failure of the trial court to instruct upon appellant's theory of her case. Appellant particularly relies upon the trial court's refusal to give her requested instructions "A" and "B".

Appellant's Request "A" reads:

"You are instructed that if you find that the insured Elmer W. Cone on the occasion in question was suddenly stricken with a fainting spell or lost consciousness from an unknown cause which was unforeseen and not reasonably to be anticipated which produced in him such physical or mental incapacity as to render him incapable of controlling his automobile and as a direct result thereof said automobile angled to the left out of control across the parking and across a yard and into violent collision with a stone edifice thereby causing his injuries and death then you may find his death resulted from 'bodily injuries caused by accident' within the meaning of the policy."

Appellant's Request "B" reads:

"The court instructs the jury that in determining whether the insured, Elmer W. Cone, received bodily injuries in the collision of his automobile with a stone church edifice which were directly caused by an accident and resulted directly and independently of all other causes in his death, the fact that he had disease or physical infirmity, if you so find, does not constitute a defense to this action, if you find that such disease or physical infirmity, if any, would not have caused the insured to die at the time and under the circumstances he did die except for such accidental bodily injuries, if any."

The court denied both requests. The trial court indicated he was instructing by use of the definition under Missouri law of "remote" and "proximate" cause rather than the exact language of the policy. The court instructed:

"Therefore, if you find that an accidental collision between a motor vehicle · occupied by Elmer W. Cone and the Combs Chapel was a direct and proximate cause of the death of Elmer W. Cone, and if you further find that pre-existing disease was not a cause of the death of Elmer W. Cone, or that pre-existing disease was a cause of the death of Elmer .W. Cone and that it was a remote and indirect cause, then your verdict must be for the plaintiff.

\* \* \* \* \* \*

"A death is proximately caused by an event, act or omission whenever it appears, first, that the event, act or omission played a substantial part in bringing about or actually causing the death and it further appears that the death was either a direct result or reasonably probable consequence of the event, act or omission."

Appellee again raises Rule 51 with regard to the failure of appellant's counsel to properly object to the court's refusal to give the requested instructions. Rule 51 reads in part:

"No party may assign as error the giving *or the failure to give an instruction* unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury." (Emphasis ours.) Fed. R.Civ.P. 51.

Rule 51 is often overlooked by counsel when related to the refusal of the trial court to given a specific instruction requested. When counsel fails to offer specific objection, the trial court may very well feel that this is because he is in essence covering the subject matter of the request in a different form. He may be in error in his understanding. Rule 51 places the additional responsibility upon counsel to specifically point out where the court's charge errs.

In the instant case the court felt his instructions covered the subject matter in Request "B". Appellant's counsel did not point out any insufficiency. Under the circumstances, we feel appellant

is estopped to raise specific error at this time. See Krug v. Mutual Ben. Health & Accid. Assoc., 120 F.2d 296, 301 (8 Cir. 1941). However, appellant urges that the trial court has the duty to instruct upon her theory of the case notwithstanding the failure to object. Without passing upon the merits of appellant's contention or the alleged rule from which counsel argues,[3] we can find no prejudicial error in the rejection of the request. The court specifically stated he was instructing under the law of Missouri relative to proximate and remote cause as applied in accident insurance cases. The court felt appellant's request "B" was proper under Missouri law but unnecessary. It is true appellant's request finds its origin in Beimdiek v. New York Life Ins. Co., 183 S.W.2d 379 (Mo. Ct.App.1944), where its precise language was approved.

The trial court relied upon the language in Young v. New York Life Ins. Co., 360 Mo. 460, 228 S.W.2d 670. Actually the court's instruction is derived from Goodes v. Order of United Commercial Travelers, 174 Mo.App. 330, 356, 156 S.W. 995, 1003, holding:

"[W]here it is agreed in an accident policy to pay in case the injuries result in the death of the insured and it appears that they are sustained through external, violent and accidental means, independent of all other causes, the causes meant are the proximate or direct, not the remote causes * * *."

However, Beimdiek is not comparable in facts to the instant case. The Beimdiek rule is well summarized in our decision based upon Missouri law of Mutual Ben.

Health & Accid. Assoc. v. Francis, 148 F.2d 590 (8 Cir. 1945).

"An injury which causes the death of a person in impaired health or suffering from disease is the cause of his death even though he would not have died if his health had not been impaired."

These cases deal with facts which demonstrate an accident aggravating a diseased condition. There are many Missouri cases which follow this rule. However, in the instant case we are dealing with a significantly different factual situation. Here, under appellant's theory, the accidental collision did not necessarily act upon a dormant, latent diseased *condition* of the insured. Appellant's theory is that the decedent did not die of the diseased condition, but by trauma received in the collision. In defending against this theory, the appellee contended that the insured's disease either was the direct cause of death before collision *or* that the disease was the active, efficient and procuring cause that set in motion the event that caused the death; thus it contends that disease was a *moving* cause, not merely a condition. Under these circumstances, we find appellant's Request "B" inapplicable to the facts involved.

However, appellant urges that even though the diseased condition caused the insured to lose control of his vehicle, if the death ensued by reason of the trauma rather than the disease there is still liability under the policy. This theory is explicit in appellant's Request "A".

The trial court itself expressly recognized Request "A" as being contrary to his charge. Therefore, under

---

3. This court in Heerman v. Burke, 266 F. 2d 935, 938, 73 A.L.R.2d 1206 (8 Cir. 1959) pointed out that a party " 'is entitled to a specific instruction on his theory of the case if there is evidence to support it, and *if a proper request for the instruction has been made.*' " (Emphasis ours.) In the *Heerman* case, the defendant's theory was not sufficiently submitted, and the plaintiff's verdict was therefore reversed on appeal. However, the per curiam opinion denying rehearing at

266 F.2d 940 in the same case offers specific warning that an exception to the court's refusal to give a request must be given. It is there noted that had the plaintiff (appellee) pointed out on appeal that the defendant (appellant) had not objected specifically to the trial judge, the case may have been affirmed rather than reversed. But since the plaintiff on appeal failed to point this procedural error out to the appellate court, the argument was held waived.

the circumstances, even absent a specific objection, we feel that Rule 51 should not bar appellant from raising this issue upon appeal. As we have discussed, the purpose of Rule 51 is to call to the attention of the trial court any possible error. Since this request was discussed specifically at the time objections were being made to the instructions by the parties and the court recognized that it was contrary to his given charge, we think the trial court was sufficiently cognizant of the error claimed.

We find no Missouri case which specifically deals with the facts at hand. Neither appellee nor appellant has called our attention to a precedent for the precise situation. Appellee relies upon the case of Stafford v. New York Life Ins. Co., 248 S.W.2d 76 (Ct.App.Mo.1952). But again, the facts in *Stafford* are distinguishable from the instant case. There the assured fell from a window and the apparent cause of death was a heart attack. There was no evidence of traumatic injuries received in the fall. The court held as a matter of law that the plaintiff had failed to prove that the cause of death was anything but the longstanding heart disease of the insured.

In Goodes v. Order of United Commercial Travelers, 174 Mo.App. 330, 156 S.W. 995 (1913), under similar facts, where a plaintiff demonstrated sufficient trauma to cause apoplexy, notwithstanding his prior history of arteriosclerosis, an issue submissible to the jury was stated.[4] See also Schepman v. Mutual Ben., Health & Accid. Assoc., 231 Mo. App. 651, 104 S.W.2d 777 (1937).

Appellant's approach was early recognized in Massachusetts in Bohaker v. Travelers' Ins. Co., 215 Mass. 32, 102 N.E. 342, 46 L.R.A.,N.S., 543, wherein the court said:

"A sick man may be the subject of an accident, which but for his sickness would not have befallen him. One may meet his death by falling into imminent danger in a faint or in an attack of epilepsy. But such an event commonly has been held to be the result of accident rather than of disease."

We think this significant since Missouri first borrowed the rule of "proximate cause" as applicable to such insurance cases, from the Massachusetts case of Freeman v. Mercantile Mut. Accident Assoc., 156 Mass. 351, 30 N.E. 1013, 17 L.R.A. 753. See *Fetter,* supra at 595.

Appellee relies in turn upon a Missouri opinion acknowledging that (in the words of the lower court's instructions here) " * * * a result though unexpected is not necessarily an accident; the cause must be accidental. * * * " Caldwell v. Travelers' Ins. Co., 305 Mo. 619, 267 S.W. 907, 39 A.L.R. 56.

In most all of the cases dealing with related problems the Missouri courts and Federal courts construing Missouri law have acknowledged the jury as the final arbiter of proximate cause. See, e. g., Brown v. Metropolitan Life Ins. Co., 327 S.W.2d 252 (Mo.Sup.Ct.1959) ; Young v. New York Life Ins. Co., 221 S.W.2d 843 (Mo.App.), modified 360 Mo. 460, 228 S.W.2d 670 (1950) ; Mutual Ben., Health & Accid. Assoc. v. Francis, 148 F.2d 590 (8 Cir. 1945).

Even though appellant's theory might be argued as correct under Missouri law we fail to see prejudicial error

4. In *Goodes,* relied upon by the Supreme Court of Missouri in Fetter v. Fidelity & Casualty Co. of N. Y., 174 Mo. 256, 73 S.W. 592, 61 L.R.A. 459, the Missouri Court of Appeal does rely upon two English cases on accident policies where disease was not covered, indicating the rule in Missouri to be similar. In Winspear v. Accidental Ins. Co., Ltd., 6 Q.B. Div.Law Reports 42 (1880–1881), the insured died from drowning in a brook. He admittedly fell into it by reason of epilep-

tic fit. The Lord Chief Justice held: "The death was not caused by any natural disease or weakness or exhaustion consequent upon disease. * * * " The other case was Lawrence v. Accidental Ins. Co., 7 Q.B.Div.Law Reports 216 (1880–1881), where the insured fell by reason of a fit into the path of a railroad train which instantly killed him. The court said it was to look only to the "immediate and proximate cause of death," and sustained a recovery.

in the court's refusal of the instruction. We are of the opinion that the trial court in instructing in the manner that he did as to "proximate" and "remote" cause did not foreclose plaintiff from arguing his theory of the case. The appellee had equal opportunity to argue that the disease either caused the death or was a substantial factor or moving force in bringing it about.

In this way the jury was properly permitted to determine which theory was to prevail. In these circumstances, we find that under the court's instructions it would have been permissible for the jury to find that the disease, although it started the pattern of events that led ultimately to the death, was nevertheless still a remote cause. Cf. Brenneman v. St. Paul Fire & Marine Ins. Co., 411 Pa. 409, 192 A.2d 745, 747 (1963). Had the verdict been for the appellant it could have been sustained under Missouri law. However, the jury was persuaded to the contrary and as a court of review we must yield to their fact finding powers where the evidence is conflicting as here. Appellee's cost for preparation of the supplemental record should not be taxed against the appellant.

Judgment affirmed.