LIBBIE KEEN, Appellant, v. CONTINENTAL CASUALTY CO., Appellee.

**INSURANCE: Accident Policy—General and Limiting Clauses—**
1 **Construction.** A general clause in a policy of accident insurance, providing a certain indemnity in case of death by accidental means, does *not* render nugatory a subsequent specific clause, limiting the

indemnity in case an accidental injury results in certain named diseases. So held in case of an injury resulting in hernia. Liberty of contract justifies such a contract.

PRINCIPLE APPLIED: In instant case, the general clause promised to pay the full named indemnity, "in the event that said insured, * * * shall receive personal bodily injury, which is effected directly and independently of all other causes through external, violent and purely accidental means * * *" The specific clause limiting liability was: "In *any* of the losses covered by this policy * * * where the accidental injury causing the loss results in *hernia,* * * * the amount payable shall be *one fourth* of the amount which otherwise would be payable under this policy, anything in this policy to the contrary notwithstanding, and subject otherwise to all the conditions in this policy contained." *Held,* the limiting clause applied where the deceased slipped, suffered a hernia, and died solely therefrom.

**INSURANCE: Accident—Existence of Disease or Bodily Infirmity—**
2  **Evidence.** Under a policy of accident insurance agreeing to pay indemnity "provided that neither such injury nor inability is in consequence of nor contributed to by any bodily or mental defect, disease or infirmity of the insured," evidence reviewed, and held to justify the finding that deceased was not suffering from hernia prior to the accident, and that there was no disease or bodily infirmity which was the cause of the death.

**INSURANCE: Trial—Existence of Disease or Bodily Infirmity—In-**
3  **structions—Sufficiency.** Instructions reviewed, and held to sufficiently present defendant's claim that deceased did not die solely from an injury effected through accidental means.

*Appeal from Pottawattamie District Court.*—THOMAS ARTHUR, Judge.

MONDAY, OCTOBER 4, 1915.

REHEARING DENIED FRIDAY, APRIL 7, 1916.

ACTION at law upon an accident insurance policy for $5,000 issued to William W. Keen, deceased, and payable to him or his wife, Libbie Keen, the plaintiff. There was a renewal of the policy, under the terms of which its value was

to increase each year $250. At the time of the renewal, the indemnity for death was $6,750. The policy also provided:

"In the event that insured, while this policy is in force, shall receive personal, bodily injury, which is effected directly and independently of all other causes, through external, violent and purely accidental means, and which causes at once total and continuous inability to engage in any labor or occupation, and which is not in consequence of nor contributed to by any bodily or mental defect, disease or infirmity of the insured."

Plaintiff sued for the full amount of the policy. At the close of all the evidence, defendant moved for a directed verdict, which motion was overruled. The court instructed that, if plaintiff recovered, the recovery could be only for one fourth the amount of the policy, and submitted special interrogatories, which will be set out in the opinion. The jury found for plaintiff in the sum of $1,817.15. Plaintiff moved for judgment on the special findings for the full amount of the policy; also moved for new trial. Both motions were overruled, and judgment rendered for the amount stated. Plaintiff appeals from the refusal of the court to allow the larger recovery. Defendant also appeals from the overruling of its motion to direct a verdict and from the judgment rendered. Defendant first served notice of appeal, but filed no abstract until after plaintiff had perfected her appeal by serving notice, filing abstract and argument. Plaintiff will be treated as appellant.—*Affirmed on both appeals.*

*I. N. Flickinger & George S. Wright* and *Clifford Powell,* for appellant.

*Saunders & Stuart* and *M. P. Cornelius,* for appellee.

PRESTON, J.—1. It is necessary that a further brief statement of the record be made. A further provision of the policy is:

"Where accidental injury results in hernia . . . the amount payable shall be one fourth of the amount which otherwise would be payable under this policy, anything in this policy to the contrary notwithstanding, and subject otherwise to all the conditions in this policy contained."

**1. INSURANCE: accident policy: general and limiting clauses: construction.**

In the application by deceased, he stated:

"I have not now nor have I had any infirmity or defect in mind or body. I am not now suffering from hernia nor any periodical, chronic, mental or physical disease."

Defendant pleaded these provisions, and alleged that, at the time the application was made, the insured had hernia, and that, if the insured suffered any injury as alleged, such injury resulted in hernia, and by reason thereof the defendant is liable for only one fourth of the amount due. For reply, plaintiff denied that deceased was suffering from hernia or any other disease. The court instructed that, if the jury found from the evidence that deceased had hernia at the time of the application, they need proceed no further, but should return a verdict for defendant, and, as before stated, that in no event should plaintiff recover more than $1,817.15. The interrogatories submitted to the jury and the answers thereto follow:

"(1) Q. Was William W. Keen afflicted with the disease known as hernia when he made his application for insurance, on the 9th day of January, 1908? A. No.

"(2) Q. Was the injury, if any, to William W. Keen a personal bodily injury, effected directly and independently of all other causes through external, violent and purely accidental means? A. Yes.

"(3) Q. Was the injury and death of William W. Keen contributed to or caused by any disease or infirmity other than the accident? A. No.

"(4) Q. Was the deceased, William W. Keen, just

prior to the date of the alleged injury, September 6, 1911, afflicted with the disease called hernia? A. No.

"(5) Q. Was the injury and death of William W. Keen solely the result of injuries sustained while lifting or attempting to lift a boat? A. Yes."

We are of opinion that the evidence is undisputed that the injury resulted in hernia. We do not understand plaintiff to contend otherwise. The plaintiff's propositions and argument are that prior provisions of the policy provide for the payment of $5,000 where the insured shall receive personal, bodily injury which is effected, directly and independently of all other causes, through external, violent and accidental means, etc., and that such conditions must be construed most strongly against the insurer and, taken together with other provisions, they must be held to apply to such disease or bodily or mental infirmity as in some manner contribute directly or indirectly to the death; that it is not enough to defeat recovery to show either disease or bodily or mental infirmity, citing *Vernon v. Iowa State Traveling Men's Assn.*, 158 Iowa 597; *Binder, Admr., v. National Masonic Accident Assn.*, 127 Iowa 25; that death resulting from disease which follows as a consequence of a physical injury is an accidental death within the meaning of the policy, citing *Delaney v. Modern Accident Club*, 121 Iowa 528; also the fishbone case, *Jenkins v. Hawkeye Com. Men's Assn.*, 147 Iowa 113; that, where a policy excepted liability from hernia, death from strangulated hernia caused by the external violence and followed by a surgical operation was covered by the policy, not being included within the terms of the exception, and the company is not relieved from responsibility where hernia is caused by external injury, citing cases; that, where hernia was excepted in the policy, and the insured fell and became afflicted with strangulated hernia, resulting in a surgical operation and death, the policy is to be construed that death from hernia caused solely and directly by external violence and a necessary surgical operation was not within the exception, citing

cases; that death resulting from a fall is covered by the policy, although the fall might have been due to a temporary disease, the fall and not the disease being the proximate cause of death, citing *Meyer v. Fidelity & Casualty Co.*, 96 Iowa 378; that, where death from a rupture of a kidney produced by an accidental fall is the result of the accident, independent of other causes, the injury is within the provisions of the policy, although a cancerous condition of the kidney made the rupture possible, citing *Fetter v. Fidelity & Casualty Co.*, 174 Mo. 256 (61 L. R. A. 459).

Counsel for plaintiff concede that, if the death may have resulted from either disease or accident, there is no presumption as to the cause of death, but contend that the burden of proof is on the insurer to show that the cause of death was disease, and not accident, citing the *Fetter* case, *supra,* and other cases.

It is plaintiff's contention that all questions of interpretation are eliminated by the special findings of fact of the jury, which furnish no basis for the defendant's contention, and show that the injury and death were the direct and immediate result of the injury, without the intervention of any preceding or subsequent disease. Some of these propositions are pertinent to the inquiry as to whether plaintiff is entitled to recover in any amount. But here we have a specific provision of the policy that, if an injury results in hernia, the recovery is to be but one fourth the amount which would otherwise be payable, notwithstanding other provisions of the policy. It is contended by defendant that the liability of the company under the express provisions of the policy is limited to one fourth of the amount otherwise due, and there can be no recovery in excess of that sum, and that provisions in policies of accident insurance stipulating for non-liability, or for a reduced liability in the event that the insured is injured under certain conditions or in certain designated ways, or in the event that the accident results in certain designated bodily injuries, are valid, and have been universally sustained by the courts, citing

*Flower v. Continental Casualty Co.,* 140 Iowa 510; *Little v. Iowa S. T. M. Assn.,* 154 Iowa 440; *Continental Casualty Co. v. Fleming* (Ky.), 124 S. W. 331; *Continental Casualty Co. v. Morris* (Texas), 102 S. W. 773; *Diddle v. Continental Casualty Co.* (W. Va.), 63 S. E. 962. We are of opinion that the trial court did not err in limiting the recovery to one fourth.

2. Deceased and his wife were at Bald Eagle Lake, Minnesota, at the time of the alleged accident. On the morning of September 6, 1911, he went to the lake, a short distance from the house, to go fishing. It had rained the night before, and there was water in the boat which he was to use. Plaintiff's claim is that there was water in the boat and that deceased attempted to turn it over to turn the water out, and slipped, and felt something break loose inside of his bowels. There was no one but deceased present at that time. Declarations of deceased claimed as part of the *res gestae* are shown as to the cause of the injury. There is evidence that, when deceased returned to the house, he complained of severe pain, physicians were sent for, and an examination disclosed that there was then a hernia, which developed into a strangulated hernia. He was taken to Omaha, where an operation was performed to relieve the patient. He died of peritonitis in two or three days. There is no question for us as to whether the deceased was injured in the manner claimed, because counsel for defendant concede in argument that:

2. INSURANCE: accident: existence of disease or bodily infirmity: evidence.

"The undisputed evidence clearly established that the death of the insured was brought about by the strangulation of an umbilical hernia; that if this hernia did not exist prior to the alleged accident, then, under the evidence, it must necessarily have been caused by the accident, in which event, under the terms of the policy, the company's liability would be one fourth the amount otherwise due. The trial court was confronted with this situation; the undisputed evidence showed that death was caused by strangulated hernia. If the hernia existed prior to the accident, there was no liability. If the

accident caused the hernia, there was a liability of one fourth. . . . The court concluded that there was a conflict in the testimony as to whether the hernia existed prior to the alleged accident or was caused by it. It instructed the jury, in effect, that they should find that the defendant was not liable in any amount if the hernia existed prior to the accident; that, if the alleged accident was the cause of the hernia, then the limit of the defendant's liability was one fourth. . . . While we feel very strongly that the verdict of the jury to the effect that the insured did slip and that the necessary element of accidental means was present, was against the overwhelming weight of the evidence, we shall not urge that the trial court erred in not taking the case from the jury on that ground, and we shall not consider this question in our argument. . . . The undisputed evidence shows that the injury was not the cause of death. . . . We contend that the trial court should have directed a verdict for the defendant, because the undisputed evidence showed that, even if the insured did receive an injury through accidental means, such injury was not the sole cause of death independent of pre-existing defect or infirmity. This is the only ground upon which we now ask reversal. . . . The undisputed evidence shows that Keen was suffering from a hernia, or bodily defect, at the time of this alleged accident, and that this infirmity was at least one of the causes of death.''

The point then, and the only point, for determination on defendant's appeal, is the one indicated in the foregoing quotation from defendant's brief. Evidence was introduced on behalf of defendant that deceased had hernia before the injury, and, had the jury so found, such finding would have had sufficient support. But, after a careful reading of the record, we think that there was sufficient evidence to support the verdict and special findings of the jury, and that the deceased was not so afflicted at the time of his application or at the time of the accident. We shall not attempt to refer to all of it.

Deceased was about 60 years of age, 6 feet in height; weight, 240 to 250 pounds. He had been a railway conductor, but, for some years prior to his death, he had been baggage man. He was somewhat corpulent, and for a year or such a matter before his death, had been wearing a rubber obesity belt one foot wide in front, but it did not reach up to the navel. It is plaintiff's contention that this belt was worn by deceased for his comfort because he was required to be on his feet a great deal. Plaintiff testified that deceased went to the lake on September 4, 1911, for a vacation; that, when he came to the lake, he was in his usual robust health—no disease of any nature whatever; never had complained of any ailment whatever.

"Next morning he was suffering such intense pain we called the doctor. When the doctor came the first time, he did not make an examination of the bowels, but did the second trip. The second visit was about three hours after the first. At this time, he made a personal examination of Mr. Keen's body, and I saw the stomach and bowels at that time. The tissues seemed very much swollen and inflamed, and the intestines protruded about three inches, as near as I could tell. There seemed to be much swelling and inflammation. At that time, he was moaning and writhing with pain and had high fever. Dr. Francis said there were indications of peritonitis. After I found the condition of Mr. Keen, we came on the first train to Omaha. The doctors made an examination and said it was necessary to have an operation. They operated Saturday afternoon, September 9th, and he lived until the next Tuesday morning. After we left the lake, the swelling of the abdomen and the intestines increased and the protrusion of the intestines increased. The protrusion of the intestines was at the navel. There had been no protrusion of the intestine in the navel prior to the time he went to the lake. About a year prior to the time there had been a sort of swelling or projection not bigger than a hazelnut at the navel. It was about this time that he secured the belt which he wore from

the time he got it and was wearing it at the time he came to the lake. After the injury, we could feel the intestine in the sac. When I first saw this after he came back from the boat landing, it was about half the size of an egg and kept increasing in size."

Dr. Jonas, testifying for defendant, testified as to deceased's consulting him about a belt about a year before, and says:

"At that time there had been no pressing of the intestines through the lining. There was no breaking through of the peritoneal lining at all or of the intestine at that time, nor anything of the kind. He did not complain of any pain in the umbilicus. Saw him next in the hospital, September 6, 1911, suffering from peritonitis. There was nothing to indicate that his prior condition was the cause of his condition then. In my opinion, his condition was due to an accident, lifting the boat and straining. His death was from peritonitis, induced by the strangulation resulting from attempting to lift the boat. The cause of his death was hernia only as connected with the strain and the lifting of the boat. The diagnosis of his condition in the hospital would be attributed to the strain in lifting the boat. The strain of lifting the boat caused the protrusion of the intestine, and the strangulation created inflammation at that point which developed in peritonitis, which caused his death. Next to the groin, the navel is the weakest point in the abdominal region."

Dr. Francis, testifying for defendant, said he saw deceased at the lake on September 7th.

"I asked him as to his condition and the probable cause of it. Told me he thought it was something he ate that didn't agree with him. I did not find a protrusion of the intestine at the umbilicus. I pronounced it an obstruction of the intestine. About a month after the injury, I wrote the following letter to Mrs. Keen: 'Dear Madam: I have not heard from any insurance company, but I firmly believe that his death was due to an accident.' "

In his testimony as a witness, he claimed that he had omitted the word "not;" that his death was not due to an accident.

"I told you he had an obstruction of the bowels. I was pretty firmly of the opinion at that time it was hernia. I never found it out personally, but I was told so. I received the ordinary fees as paid in this state for this kind of testimony—$50—which has already been paid."

This is not all the testimony of the doctor. He gave evidence against plaintiff and explained some prior statements made by him.

Mrs. Keen testified, in rebuttal, that:

"At the time the policy was issued, Mr. Keen did not have a hernia or anything that indicated in the slightest a sign of a hernia; that up to the time he went to Bald Eagle Lake he did not at any time make any complaint of pain in his stomach or bowels or a hernia. About a year before his death there was a small knot of fat, it protruded at the navel and was caused by a cough he had. The largest I ever saw it, it was about the size of a hazelnut; there was never any complaint of pain or suffering by Mr. Keen in connection with that; Mr. Keen did not ever have a hernia or trouble or disease for 20 years prior to the injury, that I know of."

Witness Schonlau testified:

"Am assistant station master at the Union Station at Omaha. Had known Mr. Keen six or seven years, never knew of his being ill or sick in that time; I was with him several times a day just before he went to the lake in September. He was on his feet almost constantly, 11 or 12 hours a day; never heard him make any complaint of pain. Shortly before he went to the lake in September, I saw the front part of his body naked; I didn't notice any indication of a protrusion of the navel. When he took the train to go to the lake, he was in perfect health, as far as I could see."

Witness Nichols says:

"I knew Keen 10 years; I lived in the house with him a

year and half. He was a fine looking man and very active and well for his size. I never saw anything wrong with him in any way, shape or form or heard him complain. He was very energetic and active.''

Dr. Hanchett, physician and surgeon for 34 years, says:

''I am acquainted with the manifestations of what is called an ordinary hernia. Q. Supposing a fleshy man, weighing about 250 pounds, should have a protrusion at the navel, say, about the size of a hazelnut, which increased or decreased in size from coughing, and suppose that had existed for several years, but no pain or inconvenience to the patient is noticed, no discomfort; to what would you ascribe that condition—that of hernia or otherwise? A. Well, that might be simply the development of the external parts without any hernial protrusion through. It might be hernial, of course, but we should expect that there would be pain and discomfort, and if it was a growth, and of only that very small size, it would hardly be called a hernia at that point. Q. If it was a hernia, such as a protrusion of omentum or of peritoneum in a sac of that kind, it would be ordinarily accompanied with pain or discomfort? A. It would be likely to be; yes, sir.''

On cross-examination, in answer to defendant's hypothetical question based upon its assumed state of facts, but as to which there was a conflict, witness answered that, if such facts were true, it would indicate a hernia of some considerable duration, but that upon such a state of facts, there would be pain or discomfort. In answer to a similar question, Dr. Tinley said it could and could not be hernia; that:

''The feeling of the mass, the location and the increase and decrease in size would have to be the guide by which it was judged, and our ability to reduce the same. If there was bulging from coughing and a deficiency in the muscular wall at that point—you would have to take the two points in consideration—there would be a suspicion of hernia, but not positive evidence of it. There is almost constant pain while there is a bulging. A congenital opening in the wall through which

a hernia might pass, although the hernia had not yet passed through it, would be a defect in the physical make-up. I would have to say it would be abnormal, but it would be a common abnormality. A man in normal or perfect condition would not have such an opening there. A lean man is just as apt to have hernia as a fat man. Q. Isn't it a fact that a large percentage of people beyond 60, who are fat, have more or less a sort of a navel protrusion—navel prominence by reason of being fat, than others? A. Yes, sir. Q. Suppose, for instance, a man is lifting a boat and slipped and he at once had strangulated umbilical hernia causing peritonitis, and death; that for eight or ten years he had had that slight protrusion as referred to with no discomfort or pain, etc., would you ascribe the umbilical hernia to former condition, or to the fact that he had slipped in trying to lift the boat and throw out the water? A. No question from what has been stated but that there was a rupture of the intestine brought down there by the strain.''

Witness Quinn says that Mr. Keen was in the habit of passing the residence of the witness, passing up and down the hill nearly every day and that he never noticed anything wrong with him.

Witness Cook lived near Mr. Keen and had seen him mowing his lawn a great many times; made neighborly calls; never heard him complain of hernia.

Such, in a general way, is the evidence introduced by plaintiff on this point, and we think it is sufficient to show that the jury could have found that deceased was not suffering from hernia prior to the accident, and that there was no disease or bodily infirmity which was a cause of the death. The defendant's evidence was not undisputed, as it contends, but there was a conflict which was for the determination of the jury.

There is no claim by defendant that deceased had any other disease prior to the injury. Because of this conflict, we deem it unnecessary to discuss at any length the cases cited

by defendant, to the effect that there could be no liability for a disability happening directly or indirectly, wholly or in part, because of or resulting from any disease or bodily infirmity, as some of the policies in the cases cited provide. Defendant's citations are *Binder v. Association, supra, Delaney v. Company, supra, Vernon v. Association, supra,* and other like cases. But we are of opinion that, in the instant case, the court, by its instructions, covered all that defendant claims for its cases.

The trial court instructed:

"(9) Among other things, the policy in suit provides for payment of indemnity in the event that insured 'shall receive personal bodily injury, which is effected directly and independently of all other causes through external,

**3. INSURANCE: trial: existence of disease or bodily infirmity: instructions: sufficiency.** violent and purely accidental means, and provided that neither such injury nor inability is in consequence of nor contributed to by any bodily or mental defect, disease or infirmity of the insured.' And you are instructed that such provision is binding upon the plaintiff and the defendant in this case.

"(10) It is contended by the defendant company that, prior to and at the time of the alleged accident, the insured had on his person, at his navel, a hernia, and that such hernia developed into the strangulated hernia which afterward appeared at the identical same place, and that such smaller hernia contributed to causing the strangulated hernia and the death of the insured, and that the accident, if there was one, was not the sole and only cause of the death of the insured. On the other hand, the plaintiff, while admitting that there was a small protrusion or lump at the navel, before the accident, claims that it was not hernia, and that it in no wise contributed to the death of the insured. The burden of proof is upon the plaintiff to establish by the evidence that William W. Keen received a personal, bodily injury, effected directly and independently of all other causes, through purely accidental means, and that his death resulted necessarily and

solely from such injury. If she has so shown by a preponderance of the evidence, and the other matters necessary to her recovery have been shown, under these instructions, then she will be entitled to recover in this action. But, if she has not thus shown by the evidence, your verdict must be for the defendant. If you find from the evidence that the death of the insured was contributed to by the bodily defect existing at his navel before the accident, if there was an accident, then you must find for the defendant. If you find from the evidence that the insured did in fact suffer an accidental injury substantially as claimed by the plaintiff, and as described in other instructions herein, and that such injury aggravated a bodily defect present at the time, at the navel of the insured, and co-operated with such defect in causing the death of the insured, then under such circumstances, if you should so find them from the evidence, the plaintiff cannot recover in this action, and you must find for the defendant. Whether or not the accident in question, if you find there was an accident, was the proximate and sole cause of the death of William W. Keen, is a question of fact for you to determine from the evidence, governed by the foregoing instructions, on that matter. In deciding said matter, you should consider the physical condition of the insured prior to the alleged accident and afterwards, as shown by the evidence, and all the facts and circumstances in evidence bearing thereon.

"(11) If you find from the evidence that insured was free from hernia at the time he made the application for the policy in suit, and you further find from the evidence that the insured did in fact suffer an accidental injury effected directly and independently of all other causes through purely accidental means, and that the death of William W. Keen resulted necessarily and solely from such injury, as hereinbefore instructed, then plaintiff will be entitled to recover in this action; but if such matters are not so shown, your verdict must be for the defendant."

These instructions are as favorable to defendant as it

could ask. Some of plaintiff's cases have already been referred to in Paragraph 1 of the opinion. They also rely on some of the cases cited by defendant and the following additional authorities: *Thornton v. Travelers' Ins. Co.* (Ga.), 42 S. E. 287; *Fetter v. Casualty Co., supra.* But, for the reasons already stated, we deem it unnecessary to refer further to the cases.

Plaintiff's motion to strike defendant's argument is overruled. The judgment and rulings of the trial court are— *Affirmed on both appeals.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.