Dale C. **RICHARDSON**, Appellee,

v.

**COMMUNICATIONS WORKERS OF AMERICA, AFL–CIO, and Communications Workers of America, AFL–CIO, Local 7495, Appellants.**

**No. 73–1018.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1973.

Decided Oct. 26, 1973.

Rehearing and Rehearing En Banc Denied Nov. 20, 1973.

See also 469 F.2d 333.

J. Patrick Green, Omaha, Neb., for appellants.

Edith D. Hakola, Arlington, Va., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

LAY, Circuit Judge.

This is an action by Dale C. Richardson under § 301(a) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(a)[1] against his former employer, Western Electric Company, and the Communications Workers of America, AFL–CIO (hereinafter called the International) and Local 7495, an affiliate of the International (hereinafter called the Local). The claim initially arose from an alleged breach of the existing collec-

---

[1]. 29 U.S.C. § 185(a) reads:
"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

tive bargaining agreement in which Richardson claimed that by reason of his nonunion membership he was wrongfully discharged from his employment with Western Electric. In the first trial Richardson received a verdict of $20,000. However, the trial court reduced the verdict to $1,500 on the ground that damages were allowable only for six and one-half months—the remaining life of the collective bargaining agreement. On appeal, this court held that ruling to be error.. We also held to be error the district court's refusal to entertain plaintiff's suit for mental anguish arising out of the unions' alleged intentional discrimination. We remanded the case for a new trial in the § 301 suit on damages only and additionally ordered a reinstatement of the discrimination claim against the unions. See Richardson v. Communications Workers, 443 F.2d 974 (8th Cir. 1971).

On the second trial the jury awarded damages in the § 301 suit against the employer, Western Electric, as well as against both unions, in the sum of $92,000. The jury apportioned the damages according to the respective roles of the defendants in the wrongful discharge of Richardson, 30% against Western Electric and 70% against the defendant unions. The Court thereafter entered judgment against the unions jointly in the sum of $64,400. It is from this judgment that the unions now appeal.[2] Western Electric did not appeal.

On this appeal the unions claim that the trial court erred in (1) charging that the Local and International Unions were responsible for the acts of the members, officers and stewards as a matter of law; (2) failing to sever the question of the International's liability from that of the Local and thereby failing to instruct the jury to apportion the damage between the two. unions; and (3) refusing to grant a new trial on the ground that the damages of $92,000 were excessive. We affirm the judgment of the district court.

The first two claims were not raised by the unions until the § 301 suit was remanded for a new trial on damages. In the original trial, the jury found each of the defendants liable for the wrongful discharge in breach of the collective bargaining agreement. The record fails to show that either union sought a directed verdict in the first trial on the theories now raised.[3] When the trial court reduced the original verdict to $1,500, the plaintiff filed a notice of appeal and the employer and the unions cross-appealed. However, the only ground of the unions'

---

2. The jury additionally awarded the sum of $250,000 against the unions on the second claim arising from the alleged intentional discrimination. Separate appeals were lodged by both unions from the judgment on the first claim under § 301, the subject of this appeal, and by the plaintiff Richardson from the district court's order granting the unions a new trial on the second claim relating to damages for mental distress. This court refused to entertain both appeals on the jurisdictional basis that neither order was appealable. We held that a grant of a motion for new trial is not a final order and that, since a claim between the parties was therefore still pending in the district court, there was no final judgment yet appealable under the § 301 claim. Richardson v. Communications Workers, 469 F.2d 333 (8th Cir. 1972), cert. denied, 414 U.S. 818, 94 S.Ct. 38, 37 L.Ed.2d 50 (1973). Thereafter defendants secured an order from the district court under Rule 54(b) of the Federal Rules

of Civil Procedure and their appeal from the § 301 judgment was properly lodged in this court. We find no merit in plaintiff's claim that the district court was without authority to enter the 54(b) order before the issuance of mandate in the second appeal. The orders appealed from were not final and therefore the entire case still rested in the district court. Cf. Gallon v. Lloyd-Thomas Co., 261 F.2d 26 (8th Cir. 1958); Ruby v. Secretary of United States Navy, 365 F.2d 385, 388 (9th Cir. 1966) (en banc), cert. denied, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967).

3. The record discloses that the motion for directed verdict in the first trial was dictated into the record by the unions' attorney and was based only on two grounds: (1) that the plaintiff had failed to prove a prima facie case under § 301 and (2) that plaintiff had failed to prove conspiracy.

cross appeals, even though there existed a judgment of liability against both unions, asserted that the plaintiff should have exhausted his administrative remedy provided by contract. No challenge was made as to the issues governing liability now raised.

The unions here urge that the prior finding of liability does not specify the *basis in fact* for such liability and therefore the International's liability for the acts of the Local should have been left to the jury. We disagree. Although the prior finding of the jury was that the International *separately* breached its duty in failing to adequately represent the plaintiff, the basis of liability as instructed upon by the trial court relates to agency principles.[4] In the original trial the court considered the liability of the International to be a question of fact under all the evidence. The trial court there instructed:

> "In order for the conduct of the local union through its agents to be attributed as also being the conduct of the international, the international union must join with the local in authorizing the general conduct which led to the breach of contract, if any, or sympathized or by some other means required such conduct."

In our prior opinion ordering a new trial on damages we discussed the unions as a single party since no claim as to their having any separate interests was raised on appeal.[5] We remanded the case with directions to try the cause on damages only with apportionment of

fault between the employer and the "union" to be determined under the principles of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

The earlier judgment of the district court is the law of the case as it reflects upon any possible defenses to liability of the two unions. See, e. g., United States v. Hoffa, 402 F.2d 380, 387 (7th Cir. 1968), cert. denied, 400 U. S. 1000, 91 S.Ct. 455, 27 L.Ed.2d 451 (1971); White v. Murtha, 377 F.2d 428, 431–432 (5th Cir. 1967); Stonega Coke & Coal Co. v. Price, 116 F.2d 618, 621 (4th Cir. 1940); Toucey v. New York Life Ins. Co., 112 F.2d 927, 928 (8th Cir. 1940), aff'd, 313 U.S. 538, 61 S.Ct. 833, 85 L.Ed. 1507 (1941); 1B Moore's Federal Practice § 0.404[10] (2d Ed. 1965). The defendants' failure to properly preserve these defenses in their motion for directed verdict in the original trial and their total abandonment of these issues on the original appeal precluded their consideration in the second trial and prevents the unions from belatedly raising these issues on appeal. These questions have been adjudicated and no appeal has ever been properly perfected challenging them. As such, the unions are precluded from challenging the finding of liability on the § 301 charge on this appeal. Cf. Smith v. American Guild of Variety Artists, 368 F.2d 511 (8th Cir. 1966), cert. denied, 387 U.S. 931, 87 S.Ct. 2052, 18 L.Ed.2d 991 (1967).

Defendants additionally urge that although the finding of liability

---

4. Article 5, § 2 of the bargaining agreement specifies that the International delegates to each of its Locals the right to process all grievances initiated by the employees. In the instant case, the Local refused to process Richardson's grievance. Thus, there was a clear basis upon which the jury could find that the International breached its agreement and as to these facts the action of the Local did become the action of the International.

5. In the original proceeding, the unions responded to plaintiff's complaint with a joint answer filed by the same attorney. The an-

swer did not allege that the defenses of the two unions were in any way separate and distinct. In their amended answer filed before the second trial, the unions again filed a joint answer by the same attorney, and for the first time denied that "at all times alleged in the amended complaint that the local union was an agent of the defendant international union." We note also that at all times the two unions have filed joint briefs prepared by the same counsel, evidently without thought as to the possible conflict of interest between the two parties by reason of the same representation.

from the prior trial might stand, the jury on remand should still have been instructed to apportion the damage between the International and the Local. However, in view of (1) the basis of liability of the International as originally instructed upon by the district court, (2) the failure of the unions' counsel to object to this instruction, (3) the jury's finding that the International's liability was based on its authorization of the Local's conduct, and more significantly, (4) the unions' abandonment of these issues on the first appeal, we approve the district court's instruction at the second trial grouping the International and Local together for purposes of apportioning the damage between the employer and the unions.[6]

■ This brings us to defendants' final claim that the damages were excessive. Richardson was awarded $92,000 as damages arising from his wrongful

---

6. In the second trial the district court in instructing on the § 301 claim stated:

"You are also instructed that the Court has already determined and you must accept as already established as a matter of law, that plaintiff's discharge from employment was wrongfully and unlawfully induced by the defendants Communications Workers of America, AFL-CIO and Local 7495, Communications Workers of America, AFL-CIO, because of plaintiff's non-membership in the defendant unions."

The court also instructed as to the apportionment of damages in part as follows:

"On the other hand if you find that plaintiff's damages, if any, were contributed to by both the unlawful breach of contract by the defendant company, and the unlawful conduct of the defendant unions in inducing such breach, then you will apportion the damages between the defendant employer and the defendant unions according to the degree of fault of *each*, as called for by the special interrogatories to be submitted to you. The verdict you return, however, will reflect only the total amount of damages, if any, plaintiff has sustained on his first claim." (Our emphasis.)

Interrogatory No. 3 reads:

"3. IF YOUR ANSWER TO INTERROGATORY NUMBER 1 IS 'YES' INDICATE THE PERCENTAGE OF THE RESPONSIBILITY FOR THE PLAINTIFF'S DISCHARGE THAT YOU FIND FROM THE EVIDENCE. (ON THE BASIS OF THEIR RESPECTIVE ROLES IN CAUSING IT), SHOULD BE APPORTIONED TO EACH DEFENDANT.

A percentage for Western Electric and a percentage for the defendant unions.

WESTERN ELECTRIC ——%
THE DEFENDANT UNIONS ——%

(The percentage apportioned to either of the defendants may range from 0% to 100%, but the aggregate of the percentages apportioned must total 100%)."

On the mental suffering claim, the court instructed that the agents of the local union are at the same time agents of the national union when, as under the facts here, the local union is subject to the control of the national. No such instruction appears as to the first claim. In excepting to the instructions the unions' joint counsel simply stated:

"Defendant unions except to the instruction lumping together the local and national or international unions as one.

"The defendant unions further except to the instruction which stated in substance that the agency of the international union or, as referred to by the Court, the national union, could be determined by the acts of the members of the local union."

It is obvious, we think, that the defendants' exception was directed to the actual instruction in the second claim. The claim for intentional discrimination, based on the unions' statutory duty of fair representation, involved only the unions, and was directed in this court's prior opinion to be tried as to both liability and damages, since neither had been determined. The trial court has now granted a new trial on this claim.

Whether the court erred in instructing as a matter of law on the liability of the International, or whether the court should have instructed, as it did in the original trial, that the International's liability is one of fact, is an issue involved in the discrimination claim and is not before us on this appeal. No objection was taken to the interrogatories; no different form of interrogatory was requested by the defendant unions. Under the circumstances, an alternate basis for denying the unions' belated claim is that it was not properly presented to the trial court. Rule 51 of the Federal Rules of Civil Procedure requires that objections to instructions be made before the jury retires. We have spoken many times as to the efficacy of such a rule. See, e.g., Fulton v. Chicago, R.I. & P.R.R., 481 F.2d 326 (8th Cir. 1973); Walther v. Omaha Public Power Dist., 412 F.2d 1164 (8th Cir. 1969); Continental Casualty Co. v. Jackson, 400 F.2d 285 (8th Cir. 1968).

discharge. At the time of his discharge on September 1, 1966, he was 27 years of age. He had reached the highest grade which an hourly employee could hold (Grade 5) and was second in seniority among the 164 hourly rated shop and warehouse employees in the Omaha plant. By the time of the second trial, he had secured alternate employment as a village police officer and it was stipulated that his lost wages to the date of trial were approximately $12,000.

In discussing the damage question under a § 301 claim, we observed in our prior opinion:

"[A]n employee wrongfully discharged under a collective bargaining agreement, as exists here, suffers more than just the loss of a job itself. His damage must be appraised in terms of not only his wages, but the loss of seniority and the benefits which flow from it; he has thus lost his reasonable expectancy as to his continued employment. To measure this loss only to the expiration of an existing bargaining agreement fails to take into consideration the realities existing. It is true that this expectancy of continued employment might expire if the company goes out of business or if the collective bargaining agreement is not renewed with the union. . . . However, as these factors affect the employee's expectancy of work, in the present case they are even less contingent than the employee's possible contemplation of his own death or unforeseen disability. None of these considerations provide an automatic bar to a recovery for future wages beyond the termination of the bargaining agreement.

"Federal jurisdiction under § 301 is more than a proving ground for breach of employment contracts; it is rather a statutory ground for suits brought to implement labor policy as suggested by the Labor Management Relations Act. . . . When an employee's expectancy of employment is challenged by invidious discrimination of the company or the union arising from his nonunion membership, the law should not react niggardly as to realization of his whole damage. As the Supreme Court has written, 'there are problems so vital to the implementation of federal labor policy that they will command a high degree of inventiveness from the courts,'" quoting United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 701, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). Richardson v. Communications Workers, 443 F.2d 974, 979 (8th Cir. 1971).

In the charge to the jury the trial court instructed the jury in accord with our directions.[7]

---

7. The charge reads:

"Elements of plaintiff's alleged damage include loss of direct wages, overtime pay, such fringe benefits as paid vacations, insurance benefits, pension and retirement, and seniority rights. In this regard you should determine the period of time for which plaintiff would likely have continued in the employ of the defendant Western Electric Company, Inc., in the absence of the unlawful discharge, and you should determine the value of the wages, overtime pay, and such fringe benefits as seniority rights, paid vacations, insurance benefits, pension and retirement benefits, which he could reasonably have expected to receive during such period of employment. From such total sum as you determine plaintiff would have received had he not been wrongfully discharged, you must deduct from such total sum the value of the compensation and fringe benefits which an individual with the plaintiff's earning capacity could reasonably be expected, in the exercise of due diligence, to receive from other available employment during the said period. Plaintiff's present employment is not necessarily such other available employment, but may be given consideration by you in making your determination.

"Upon arriving at the net loss, if any, suffered by plaintiff as just described, you shall determine the amount of any such net loss suffered to date, and the amount of any such net loss attributable to periods in the future. You shall reduce such future losses, if any, to their present value, as you will be more fully instructed later, but any net loss sustained by plaintiff to date are not to be reduced."

The trial court reviewed the charge of excessiveness on the § 301 claim on the unions' motion for new trial. It denied the same. The damages awarded cannot be reduced to any mathematical formula. In view of all of the diverse factors for jury consideration we cannot say that the trial court abused its discretion in finding the award was not excessive. See Krall v. Crouch Brothers, Inc., 473 F.2d 717 (8th Cir. 1973); Scoville v. Missouri Pacific R.R., 458 F.2d 639 (8th Cir. 1972); O'Brien v. Stover, 443 F.2d 1013 (8th Cir. 1971); Perry v. Bertsch, 441 F.2d 939 (8th Cir. 1971).

Judgment affirmed.